UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

BURTON BOONE, III, et al.,                    )
                                              )
    Plaintiffs,                               )
        v.                                )          No. 2:26-cv-00011-JAW
                                              )
SIX UNIT, LLC, et al.,                        )
                                              )
    Defendants.                               )

## ORDER ON MOTION TO DISMISS

The parties entered into a purchase and sale agreement for an apartment house and the purchasers have filed suit against the sellers, alleging fraud. The sellers have moved to dismiss the lawsuit and for an order compelling mediation, citing a mandatory mediation provision in the purchase and sale agreement. The court rejects the motion because the mediation provision contemplates that a party may ignore the mandatory mediation provision and stipulates that the penalty for doing so is the payment of the other party's attorney's fees but only if the suing party loses the lawsuit the party initiated.

## I.    BACKGROUND

On May 9, 2025, Burton Boone, III and Diamond Boone (collectively the Boones), acting pro se, filed a lawsuit in the United States District Court for the District of New Hampshire[1] against Six Unit LLC, Michael Lizotte, Erica Lizotte, and James & Stolt, LLC (James & Stolt), d/b/a Summit Real Estate, alleging that the

---

[1] On December 9, 2025, the United States District Court for the District of New Hampshire transferred this case to the District of Maine. *Order* (ECF No. 45).

Boones were defrauded when Six Unit LLC and its owners, Michael and Erica Lizotte, and their real estate broker, James & Stolt, failed to disclose that an apartment house located at 69 Lincoln Street in Lewiston, Maine has suffered a bedbug infestation, and thereby fraudulently induced the Boones to purchase the apartment. *Compl.* (ECF No. 1).

On January 27, 2026, Six Unit, LLC (Six Unit) filed an answer to the complaint plus a counterclaim and third-party complaint. *Def. Six Unit, LLC's Answer, Affirmative Defenses, Countercls., and Third Party Compl.* (ECF No. 49). Six Unit's counterclaim ran against both Burton and Diamond Boone and its third-party complaint ran against Four Points Real Estate, LLC.[2] *Id.* On January 27, 2026, Six Unit filed a motion to dismiss and a motion to compel mediation. *Def. Six Unit LLC's Mot. to Dismiss and Compel Mediation* (ECF No. 50) (*Six Unit Mot.*). On February 17, 2026, the Boones filed an answer to Six Unit's counterclaim, *Answer of Pls. Burton Boone and Diamond Boone to Countercl. of Six Unit, LLC* (ECF No. 56), and a response to Six Unit's motion to dismiss. *Opp'n of Pls. Burton Boone and Diamond Boone to Mot. to Dismiss and Compel Mediation of Six Unit, LLC* (ECF No. 59) (*Boone Opp'n to Six Unit*). On March 3, 2026, Six Unit filed a reply to the Boones' response to its motion to dismiss. *Def. Six Unit, LLC's Reply Mem. in Supp. of its Mot. to Dismiss and Compel Mediation* (ECF No. 60) (*Six Unit Reply*).

## II.    THE ALLEGATIONS IN THE COMPLAINT

---

[2]      Four Points Real Estate, LLC has not responded to the third-party complaint and on July 30, 2026, James & Stolt, d/b/a Summit Real Estate, and Erica Lizotte moved for entry of default, which the Clerk granted the same day. *Def. Six Unit LLC's Mot. for Default* (ECF No. 63); *Order* (ECF No. 64).

In their complaint, the Boones state that Six Unit is the owner of a sixteen-unit residential real property located at 69 Lincoln Street in Lewiston, Maine (the Property). *Compl.* ¶ 10. The Boones allege that within the past year, the Property has been the subject of recurring infestations of bedbugs. *Id.* ¶ 11. In particular, they allege, there was a major bedbug infestation in the summer of 2025, requiring Six Unit to hire Eagle Pest and spend $15,000 to service the infestation. *Id.* The Boones claim there have been recurring bedbug infestations at 69 Lincoln Street since the summer of 2025, requiring remediation by Eagle Pest. *Id.* ¶ 12.

The Boones state that on or around the second week of February 2025, Six Unit listed the apartments for sale on the Multiple Listing Network (MLS) for $1,650,000. *Id.* ¶ 13. The MLS listing was posted by Summit Realty as the broker for Six Unit, and Erica Lizotte was named as the broker for the Property. *Id.* ¶ 15. The Summit Reality listing did not disclose that Erica Lizotte, as seller's agent, was also an owner of the Property. *Id.* ¶ 16. As owner of the property, Ms. Lizotte was well aware of the bedbug infestation, *id.* ¶ 17, and, as Ms. Lizotte was an employee of Summit, her knowledge of the recurring bedbug infestation is attributable to Summit. *Id.* ¶ 18.

The Boones allege that despite the knowledge of the Defendants about the bedbug infestation, the MLS listing does not reveal the existence of the infestation. *Id.* ¶ 19. The Boones assert that Ms. Lizotte was an owner of the Property and that James & Stolt deliberately did not list her as an owner to avoid disclosure of the bedbug issue. *Id.* ¶ 20.

The Boones state that on February 13, 2026, they entered into a Purchase and Sale Agreement (P&S) to purchase the Property for $1,675,000 with a deposit of $30,000. *Id.* ¶ 21. However, the bedbug infestation was not disclosed in the P&S, *id.* ¶ 22, and had the true state of the infestation been disclosed, the Boones would not have purchased the Property. *Id.* ¶ 23. The Boones acknowledge that the P&S contains a mediation clause, but they claim the mediation clause is not enforceable because Six Unit and the Lizottes committed fraud. *Id.* ¶ 24.

The Boones say that once the P&S was executed, they became owner of equitable title to the Property. *Id.* ¶ 25. The Boones allege that by entering the P&S Agreement, they forewent other investment opportunities. *Id.* ¶ 26. They further allege that Mr. Lizotte deliberately made his electronic signature on the P&S Agreement illegible so that Ms. Lizotte's dual role would not be revealed. *Id.* ¶¶ 27-28. About the time they entered into the P&S Agreement, Six Unit also executed a Seller's Disclosure where Six Unit was required to disclose the bedbug infestation but failed to do so. *Id.* ¶ 29. Instead, where the form required disclosure, a giant X appeared. *Id.* ¶ 30.

After they entered into the P&S Agreement, Garrett Getch of Four Points Real Estate, the Boones' agent, discovered an invoice payable to Eagle Pest and became aware that the Property was subject to recurrent remedial actions to combat bedbug infestations. *Id.* ¶ 31. After they entered the P&S Agreement and the Boones discovered the bedbug issue, the Boones asked Erica Lizotte about the extent of the bedbug problem, but Ms. Lizotte told them that the bedbug issue was just a one-time

4

problem and the Eagle Pest intervention resolved the issue. *Id.* ¶ 32. On April 6, 2025, Erica Lizotte sent a text message to Garrett Gretch, telling him that the "Bedbug issue had been taken care of." *Id.* ¶ 33. But shortly after Ms. Lizotte informed the Boones that the bedbug issue had been resolved, they learned that a tenant at the Property had suffered a bedbug bite. *Id.* ¶ 34.

The Boones allege that Six Unit, Michael Lizotte, Erica Lizotte, and Summit Reality, all knew about the bedbug infiltration and breached their duty to inform the Boones about the infiltration. *Id.* ¶¶ 35, 37. The Boones further allege that the bedbug infestation was a material defect that materially reduced the market value of the Property. *Id.* ¶ 36. The Boones claim that the Defendants engaged in fraud by failing to disclose a latent defect in the Property. *Id.* ¶¶ 40-48.

## III.    DISCUSSION

The P&S Agreement between the Boones and Six Unit contains the following clause:

> MEDIATION: Earnest money or other disputes within the jurisdictional limit of small claims court will be handled in that forum. All other disputes or claims arising out of or relating to this Agreement or the property addressed in this Agreement (other than requests for injunctive relief) shall be submitted to mediation in accordance with generally accepted mediation practices. Buyer and Seller are bound to mediate in good faith and to each pay half of the mediation fees. If a party fails to submit a dispute or claim to mediation prior to initiating litigation (other than requests for injunctive relief), then that party will be liable for the other party's legal fees in any subsequent litigation regarding that same matter in which the party who failed to first submit the dispute or claim to mediation loses in that subsequent litigation. This clause shall survive the closing of the transaction.

*Six Unit Mot.*, Attach. 1, *Purchase and Sale Agreement* ¶ 17 (*P&S Agreement*).

Although the parties have argued about issues such as waiver, fraud, and the applicability of arbitration caselaw to mediation clauses, the Court readily resolves the motion to dismiss on the language of the clause itself.  Six Unit is correct that the clause requires mediation before a party to the P&S Agreement may sue another.  But if a party ignores the mediation clause and instead proceeds directly to suit, the clause stipulates the penalty for doing so, and it is not dismissal:

> If a party fails to submit a dispute or claim to mediation prior to initiating litigation (other than requests for injunctive relief), then that party will be liable for the other party's legal fees in any subsequent litigation regarding that same matter in which the party who failed to first submit the dispute or claim to mediation loses in that subsequent litigation.

*Id.*  The P&S Agreement foresaw the possibility that one of the parties to the Agreement might refuse to mediate and instead proceed directly with litigation, and it provides that the penalty for doing so is that if the suing party, who failed to mediate, loses the lawsuit, the suing party "will be liable for the other party's legal fees."  *Id.*  Thus, contrary to Six Unit's position, the remedy for failure to mediate before litigation under the plain terms of the P&S Agreement is not dismissal of the lawsuit or an order compelling mediation but the payment of attorney's fees if the suing party loses.

The Court does not reach the other issues in the parties' submissions because it is premature to do so and would amount to the issuance of a forbidden advisory opinion.  *St. Pierre v. United States*, 319 U.S. 41, 42 (1941); *City of Fall River, Mass. v. F.E.R.C.*, 507 F.3d 1, 6 (1st Cir. 2007) ("[A] 'claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may

not occur at all'" (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)) (internal quotation marks omitted)).  This is because it is unknown at this point whether the penalty provision of the mediation clause will come into effect.  If the Boones succeed in the litigation, there is no contractual penalty for their failure to mediate, and if the parties settle the case, the same is true, and the Court may never, therefore, be required to address the enforceability of the mediation clause's penalty provision.

## IV.    CONCLUSION

The Court DISMISSES without prejudice Defendant Six Unit LLC's Motion to Dismiss and Compel Mediation (ECF No. 50).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 5th day of August, 2026