UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| BURTON BOONE, III, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 2:26-cv-00011-JAW |
| | ) | |
| SIX UNIT, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON MOTION TO DISMISS**

The court dismisses a seller's real estate broker's motion to dismiss a civil fraud complaint brought by buyers, who allege that the real estate broker knowing the true condition of the property actively misrepresented its condition.

**I.     BACKGROUND**

On May 9, 2025, Burton Boone, III and Diamond Boone (collectively the Boones), acting pro se, filed a lawsuit in the United States District Court for the District of New Hampshire[1] against Six Unit LLC, Michael Lizotte, Erica Lizotte, and James & Stolt, LLC (James & Stolt), d/b/a Summit Real Estate, alleging that the Boones were defrauded when Six Unit LLC and its owners, Michael and Erica Lizotte, and their real estate broker, James & Stolt, failed to disclose that an apartment house located at 69 Lincoln Street in Lewiston, Maine has suffered a bedbug infestation, and thereby fraudulently induced the Boones to purchase the apartment. *Compl.* (ECF No. 1).

---

[1]     On December 29, 2025, the United States District Court for the District of New Hampshire transferred this case to the District of Maine. *Order* (ECF No. 45).

On February 17, 2026, James & Stolt and Erica Lizotte filed a motion to dismiss and a memorandum in support of the motion to dismiss. *Mot. to Dismiss of Def. James & Stolt, LLC, d/b/a Summit Real Estate and Erica Lizotte* (ECF No. 57); *Mem. of Law in Support of the Mot. to Dismiss of Defs. James & Stolt, LLC, d/b/a Summit Real Estate and Erica Lizotte* (ECF No. 58) (*James & Stolt Mem.*).  On March 10, 2026, the Boones responded to the James & Stolt and Erica Lizotte motion to dismiss. *Opp'n of Burton Boone and Diamond Boone to Mot. to Dismiss by Def. James & Stolt, LLC d/b/a Summit Real Estate and Erica Lizotte* (ECF No. 61) (*Boone James & Stolt Opp'n*).  On March 24, 2026, James & Stolt and Erica Lizotte filed a reply to the Boones' opposition to their motion to dismiss. *Reply Mem. in Support of the Mot. to Dismiss of Defs. James & Stolt d/b/a Summit Real Estate and Erica Lizotte* (ECF No. 62) (*James & Stolt Reply*).

## II.    THE ALLEGATIONS IN THE COMPLAINT

In their complaint, the Boones state that Six Unit is the owner of a sixteen-unit residential real property located at 69 Lincoln Street in Lewiston, Maine (the Property).  *Compl.* ¶ 10.  The Boones allege that within the past year, the Property has been the subject of recurring infestations of bedbugs.  *Id.* ¶ 11.  In particular, they allege, there was a major bedbug infestation in the summer of 2025, requiring Six Unit to hire Eagle Pest and spend $15,000 to service the infestation.  *Id.*  The Boones claim there have been recurring bedbug infestations at 69 Lincoln Street since the summer of 2025, requiring remediation by Eagle Pest.  *Id.* ¶ 12.

The Boones state that on or around the second week of February 2025, Six Unit listed the apartments for sale on the Multiple Listing Network (MLS) for $1,650,000.

*Id.* ¶ 13.  The MLS listing was posted by Summit Realty as the broker for Six Unit, and Erica Lizotte was named as the broker for the Property.  *Id.* ¶ 15.  The Summit Reality listing did not disclose that Erica Lizotte, as seller's agent, was also an owner of the Property.  *Id.* ¶ 16.  As owner of the property, Ms. Lizotte was well aware of the bedbug infestation, *id.* ¶ 17, and, as Ms. Lizotte was an employee of Summit, her knowledge of the recurring bedbug infestation is attributable to Summit.  *Id.* ¶ 18.

The Boones allege that despite the knowledge of the Defendants about the bedbug infestation, the MLS listing does not reveal the existence of the infestation. *Id.* ¶ 19.  The Boones assert that Ms. Lizotte was an owner of the Property and that James & Stolt deliberately did not list her as an owner to avoid disclosure of the bedbug issue.  *Id.* ¶ 20.

The Boones state that on February 13, 2026, they entered into a Purchase and Sale Agreement (P&S) to purchase the Property for $1,675,000 with a deposit of $30,000.  *Id.* ¶ 21.  However, the bedbug infestation was not disclosed in the P&S, *id.* ¶ 22, and had the true state of the infestation been disclosed, the Boones would not have purchased the Property.  *Id.* ¶ 23.  The Boones acknowledge that the P&S contains a mediation clause, but they claim the mediation clause is not enforceable because Six Unit and the Lizottes committed fraud.  *Id.* ¶ 24.

The Boones say that once the P&S was executed, they became owner of equitable title to the Property.  *Id.* ¶ 25.  The Boones allege that by entering the P&S Agreement, they forewent other investment opportunities.  *Id.* ¶ 26.  They further allege that Mr. Lizotte deliberately made his electronic signature on the P&S

Agreement illegible so that Ms. Lizotte's dual role would not be revealed. *Id.* ¶¶ 27-28. About the time they entered into the P&S Agreement, Six Unit also executed a Seller's Disclosure where Six Unit was required to disclose the bedbug infestation but failed to do so. *Id.* ¶ 29. Instead, where the form required disclosure, a giant X appeared. *Id.* ¶ 30.

After they entered into the P&S Agreement, Garrett Getch of Four Points Real Estate, the Boones' agent, discovered an invoice payable to Eagle Pest and became aware that the Property was subject to recurrent remedial actions to combat bedbug infestations. *Id.* ¶ 31. After they entered the P&S Agreement and the Boones discovered the bedbug issue, the Boones asked Erica Lizotte about the extent of the bedbug problem, but Ms. Lizotte told them that the bedbug issue was just a one-time problem and the Eagle Pest intervention resolved the issue. *Id.* ¶ 32. On April 6, 2025, Erica Lizotte sent a text message to Garrett Gretch, telling him that the "Bedbug issue had been taken care of." *Id.* ¶ 33. But shortly after Ms. Lizotte informed the Boones that the bedbug issue had been resolved, they learned that a tenant at the Property had suffered a bedbug bite. *Id.* ¶ 34.

The Boones allege that Six Unit, Michael Lizotte, Erica Lizotte, and Summit Reality, all knew about the bedbug infiltration and breached their duty to inform the Boones about the infiltration. *Id.* ¶¶ 35, 37. The Boones further allege that the bedbug infestation was a material defect that materially reduced the market value of the Property. *Id.* ¶ 36. The Boones claim that the Defendants engaged in fraud by failing to disclose a latent defect in the Property. *Id.* ¶¶ 40-48.

## III.   DISCUSSION

### A.   Consideration of Documents Outside the Complaint

The James & Stolt/Lizotte motion to dismiss trips at the starting gate.  The movants attach a series of documents to their motion and rely on those documents to undercut the allegations of fraud in the Boones' complaint.  *James & Stolt Mem.*, Attachs. 1-9.  In 1993, the First Circuit described how a trial court must approach a motion to dismiss:

> In considering a motion to dismiss, a court must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiffs.

*Waterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).[2]  The *Waterson* Court went on to describe whether a court may consider documents and matters outside the complaint in ruling on a Rule 12(b)(6) motion:

> Ordinarily, of course, any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden, unless the proceeding is properly converted into one for summary judgment under Rule 56.  *See* FED. R. CIV. P. 12(b)(6).

*Id..*  The First Circuit noted however a "narrow exception" to this rule:

> [C]ourts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.

---

[2]   Throughout their memorandum, Defendants cite Maine law and the Maine Rules of Civil Procedure.  Maine substantive law is controlling because this is a diversity-based lawsuit.  However, Maine procedural law does not apply in federal court.  *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938).  Defendants' citations to the Maine Rules of Civil Procedure and Maine caselaw interpreting the Maine civil rules are not persuasive.

*Id.* The First Circuit has consistently reinforced this narrow exception. *See Irrizary Sierra v. Bisignano*, 158 F.4th 43, 49 (1st Cir. 2025); *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001).

Applying First Circuit guidance, the Court may consider the P&S Agreement because it is specifically referred to in the complaint. *Compl.* ¶ 21. But the other documents attached to the James & Stolt/Lizzote motion to dismiss are not "documents sufficiently referred to in the complaint."[3] *Irrizary Sierra*, 158 F.4th at 49. In fact, the complaint does not mention them at all.

The documents do not fit into any of the other categories. The Court could consider the attachments if the Boones acknowledged their authenticity. *Alt. Energy*, 267 F.3d at 33 ("When the complaint relies upon a document, whose authenticity is not challenged, such a document 'merges into the pleadings' and the court may properly consider it under a Rule 12(b)(6) motion to dismiss"). But the Boones have not done so. Nor are the attachments "official public records." The documents are not "central to the plaintiffs' claims", although they may be central to the James & Stolt/Lizotte defenses.

In accordance with First Circuit authority, the Court has not considered the documents attached to the James & Stolt/Lizotte motion and has addressed the motion to dismiss without reference to them. However, the Defendants have made the Court's review more difficult by intertwining their legal arguments, which the

---

[3] The Court considered employing Rule 12(d) and, after giving notice to the parties, converting the James & Stolt/Lizzote motion to a motion for summary judgment under Rule 56. *See* FED. R. CIV. P. 12(d). But it is reluctant to do so since the parties have yet to engage in discovery.

Court considers, with documents, which the Court may not consider. The Court has done its best to properly recast the Defendants' motion in accordance with the First Circuit restrictions on Rule 12(b)(6) motions.

### B.   Particularity and Unclean Hands

James & Stolt/Lizotte first argue that the Boones' complaint fails because under Rule 9(b)[4], a plaintiff alleging fraud must "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). James & Stolt/Lizotte correctly cite Maine substantive law on the elements of a civil claim of fraud:

> (1) that the defendant made a false representation, (2) of a material fact, (3) with knowledge of its falsity or in reckless disregard of whether it is true or false, (4) for the purpose of inducing the plaintiff to act in reliance upon it, and, (5) the plaintiff justifiability relied upon the representation as true and acted upon it to the plaintiff's damage.

*In re Boardman*, 2017 ME 131, ¶ 9, 166 A.3d 106 (quoting *Rand v. Bath Iron Works Corp.*, 2003 ME 122, ¶ 9, 832 A.2d 771) (internal punctuation omitted). Although James & Stolt/Lizotte's main point is that there can have been no fraud because the Boones were aware of the bedbug infestation and negotiated a significant discount on the price due to bedbugs, *see James&Stolt's Mot.* at 11-12, these facts do not appear in the complaint and only appear in documents the Court may not consider. To the extent James & Stolt/Lizotte's fraud and unclean hands arguments are based on documents not properly considered under Rule 12(b)(6), their arguments must fail.

---

[4]    The Defendants erroneously cite Maine Rule of Civil Procedure 9(b) and Maine caselaw interpreting the Maine version of the Rule. *James & Stolt Mem.* at 11-12. This is a federal case and federal procedural rules and caselaw apply.

James & Stolt/Lizotte's second argument is that as the seller's broker, Erica Lizotte, did not owe a legal duty to the Boones.  To buttress their argument, they turn to Maine statutory law and refer to Maine's Real Estate Brokerage Act:

> A seller agent shall treat all prospective buyers honestly and may not knowingly give false information and shall disclose in a timely manner to a prospective buyer all material defects pertaining to the physical condition of the property of which the seller agent knew or, acting in a reasonable manner, should have known.  A seller agent is not liable to a buyer for providing false information to the buyer if the false information was provided to the seller agent by the seller agent's client and the seller agent did not know or, acting in a reasonable manner, should not have known that the information was false.  A seller agent is not obligated to discover latent defects in the property.

32 M.R.S. § 13273(2)(A).  However, in their complaint, the Boones expressly allege that Ms. Lizotte did, in fact, know about the bedbugs and make a material misrepresentation about them.  They allege that Ms. Lizotte was "well-aware that the property was infested with bedbugs," *Compl.* ¶ 17, that she "represented that it was just a one-time occurrence and there had not been any further infestations than that referenced in the Eagle Pest invoice," *id.* ¶ 32, and that she "sent a text message to Plaintiffs' agent, Garrett Getch, informing him that 'Bedbug situation was taken care of.'"  *Id.* ¶ 33.  As such, this case, as alleged in the complaint, is more akin to *McGeechan v. Sherwood*, 2000 ME 188, ¶ 64, 760 A.2d 1068, where the Maine Supreme Judicial Court concluded that a misrepresentation by a real estate broker generated a triable issue for a factfinder.

Finally, James & Stolt/Lizotte contend that the Boones failed to allege with particularity that Ms. Lizotte engaged in concealment.  *James & Stolt's Mot.* at 14-16.  They cite Maine caselaw that "[c]oncealment does not include mere silence; it

occurs only when the defendant takes an affirmative action to prevent the plaintiff from learning a material fact. *See, e.g.*, *Stevens v. Bouchard*, 532 A.2d 1028, 1030 (Me. 1987).  But, as just noted, the Boones claim that Ms. Lizotte actively lied to them about the nature and significance of the bedbug issue, which seems on its face to constitute concealment under Maine law.  As this is a motion to dismiss, the Court will not discuss other arguments in the James & Stolt/Lizotte memorandum on concealment because the question is whether the Boones' count survives dismissal, not whether certain allegations within the count do so.

Finally, regarding unclean hands, James & Stolt/Lizzote assert that the Boones have misrepresented the entire agreement in their complaint by failing to include the renegotiated price due to the bedbug infestation.  Maybe so.  But the Court may not consider these arguments at this stage because the documents are not yet before it.

## IV.   CONCLUSION

The Court DISMISSES without prejudice the Motion to Dismiss of Defendants James & Stolt, LLC, d/b/a Summit Real Estate and Erica Lizotte (ECF No. 57).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 6th day of August, 2026